UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

ROGER J. OTTOMAN,

              Debtor.
_____/

WASHTENAW COUNTY, MICHIGAN,
et. al.,

              Plaintiffs,

vs.

THOMAS LEE WALKLEY, et al.,

              Defendants.
_____/

Case No. 24-45025

Chapter 12

Judge Thomas J. Tucker

Adv. No. 24-4360

## OPINION REGARDING MOTION TO REMAND AND FOR ABSTENTION BY PLAINTIFFS WASHTENAW COUNTY AND SPECTRUM MID-AMERICA, LLC

### I. Introduction

On August 22, 2024, the Defendant and Chapter 12 bankruptcy Debtor Roger J. Ottoman ("Roger Ottoman") removed a state court civil action from the Washtenaw County, Michigan Circuit Court to this Court, commencing this adversary proceeding.[1]  Now before the Court is a motion filed by the Plaintiffs, Washtenaw County and Spectrum Mid-America, LLC (the "Plaintiffs"), for abstention and remand of the removed state court action back to the state court.[2] The Motion seeks abstention based on both the mandatory and permissive abstention provisions

---

[1] *See* Docket # 1 ("Notice of Removal").  On September 6, 2024, Debtor/Defendant Roger J. Ottoman  filed an amended notice of removal of the state court action (Docket # 5).

[2] *See* "Motion to Remand and for Abstention" (Docket # 17, the "Motion").

of 28 U.S.C. § 1334(c). Three of the six Defendants in the state court lawsuit, namely, Marcia

Ottoman, Thomas Lee Walkey, and Roger Ottoman, each filed a response objecting to the

Motion,[3] and the Plaintiffs filed a joint reply in support of the Motion.[4] The Court held a

hearing on the Motion on October 23, 2024, and then took the Motion under advisement.

For the reasons stated in this Opinion, the Court will grant the Motion, based on

permissive abstention, and will remand the removed case back to state court.

## II. Background

The removed case arises out of an ongoing property dispute between the Plaintiffs on the

one hand, and Roger Ottoman and others on the other hand.

### A. The property dispute

Pre-petition, Roger Ottoman was involved in a dispute with the Plaintiffs, Washtenaw

County, Michigan (the "County") and Spectrum Mid-America, LLC, Charter Communications

("Charter" or "Spectrum")[5] and others. The dispute concerns the planned installation of

underground fiber optic cables for high-speed broadband internet within what the County and

Charter allege are public rights-of-way, located on Waterloo and McKinley roads adjacent to

parcels of land located at 12745 Waterloo Road, Chelsea, MI 48118 (the "Property"). The

County and Charter allege that "[t]he public right of way has been in existence for over a century

---

[3] *See* Docket ## 24, 26, 31.

[4] *See* Docket # 41.

[5] Charter is a company that was awarded a contract to install high-speed broadband internet in certain locations in Washtenaw County, Michigan. (*See* letter dated September 28, 2021 from the purchasing division of Washtenaw County Finance Department to Charter. (Docket # 19-1 in Case No. 24-45025 at pdf pp. 15-16)).

and permits the installation of utilities including telecommunications networks and equipment."[6]

Roger Ottoman and at least some of the other Defendants (collectively, the "Defendants")[7] claim a property interest in the Property, and dispute the existence of public rights-of-way where the internet cable is to be installed. Charter's installation of the internet cable underground in the alleged rights-of-way was made necessary by the Defendants' refusal to allow Charter or its contractors to access existing utility poles on the Property to complete its work of stringing internet cable above-ground. At least some of the Defendants allege that Vision Telecommunications, Inc. ("Vision"), a contractor Charter hired, damaged the Property when working on it, and that they are now owed damages. The Defendants have refused to allow Charter or any of its contractors to access to the purported public rights-of-way.

## B. Roger Ottoman's bankruptcy filing

On May 21, 2024, just two days before a mortgage foreclosure sale of the Property was to be held,[8] Roger Ottoman filed a voluntary petition for relief under Chapter 12, commencing Case No. 24-45025. Despite alleging in his ongoing dispute with the County, Charter, and others that he is owed damages based on pre-petition damage to the Property, Roger Ottoman failed to list any claim against the County, Charter, or any other individual or entity in his bankruptcy

---

[6] *See* Plaintiff's "Motion to Lift Automatic Stay to Continue Declaratory Judgment Action" (Docket # 19 in Case No. 24-45025) at 1 ¶ 1.

[7] The other Defendants are Roger Ottoman's spouse, Marcia Ottoman, Thomas Lee Walkley, Café Forty-One Eleven, Inc., Roger Ottoman Roger J. Trust, and Ottoman Farm, LLC.

[8] *See* "Motion to Lift Automatic Stay" filed on October 25, 2024 by secured creditor American Mortgage Fund I, LLC, "who is the holder of a 2018 mortgage in [the P]roperty." (Docket # 68 in Case No. 24-45025) at 1 ¶ 1, 2 ¶ 5.

3

schedules, which were filed on June 7, 2024.[9]  Nor were the County or Charter listed as creditors, so the notice of the bankruptcy case was not sent to them.  And despite exchanging numerous emails with the County and Charter regarding the property dispute after he filed his Chapter 12 petition, Roger Ottoman never disclosed to the County or Charter that he had filed bankruptcy.[10]

## C.  The state court lawsuit

On July 24, 2024, without notice or knowledge of Roger Ottoman's bankruptcy, the County and Charter filed a three-count complaint against Roger Ottoman and five other defendants in the Washtenaw County, Michigan Circuit Court, commencing the case of *Washtenaw County, Michigan, et al. vs. Walkley, et al.,* Case No. 24-000908-NZ (the "State Court Lawsuit").[11]  In Count I of the state court complaint, the County and Charter seek a declaratory judgment, declaring that:

> a.  The area where the installation and construction [of the underground broadband internet cable] is occurring is a public right-of-way;
>
> b.  . . . Defendants are without authority to preclude activities by either Washtenaw County or [Charter] occurring in the public right-of-way.[12]

In Count II of the state court complaint the Plaintiffs "request that [the state c]ourt enter a

---

[9]  *See* Docket # 14 in Case No. 24-45025.

[10]  *See* Plaintiffs' "Motion to Lift Automatic Stay to Continue Declaratory Judgment Action" (Docket # 19 in Case No. 24-45025) at 2 ¶ 3.

[11]  A copy of the state court complaint without its exhibits is attached to the Notice of Removal (Docket # 1) at pdf pp. 4-14.  A copy of the state court complaint with exhibits is attached as Exhibit A to the Plaintiffs' "Motion to Lift Automatic Stay to Continue Declaratory Judgment Action" (Docket # 19-1 in Case No. 24-45025).

[12]  State Ct. Compl. (Docket # 1) at pdf pp. 10-11.

4

permanent injunction prohibiting [each of the] Defendants from (1) interfering with the below-ground boring for the installation of broadband and other services along the rights-of-way on Waterloo and McKinley Roads, and (2) interfering with Charter's facilities after they are installed along the rights-of-way on Waterloo and McKinley Roads."[13]

In Count III of the state court complaint, the Plaintiffs seek "damages in excess of $25,000.00 plus costs, interest[] and attorneys' fees against Defendants" based on their "interference with [Charter's] easement and rights within the public right-of-way."[14]

Also on July 24, 2024, the Plaintiffs filed an ex parte motion for a temporary restraining order and an order to show cause why a preliminary injunction should not be issued. On July 29, 2024, the state court entered an order scheduling a hearing for August 2, 2024.[15]

On July 31, 2024, Roger Ottoman was served with the summons and the state court complaint. That day, the state court and the Plaintiffs first received notice of Roger Ottoman's bankruptcy case.[16]

---

[13] *Id.* at pdf pp. 11-12.

[14] *Id.* at pdf p. 12. The Plaintiffs are no longer seeking damages or attorney fees against Roger Ottoman. *See* "Motion to Lift Automatic Stay to Continue Declaratory Judgment Action" (Docket # 19 in Case No. 24-45025) at 4 ¶ 9. Their counsel confirmed this during the hearing on the Motion. And neither of the Plaintiffs have filed a proof of claim in Roger Ottoman's bankruptcy case. The deadline for non-governmental entities to file a proof of claim in this case was July 30, 2024. The deadline for governmental units to file a proof of claim in this case is November 18, 2024. *See* "Notice of Chapter 12 Bankruptcy Case" (Docket # 5 in Case No. 24-45025) at pdf p. 2 ¶ 8; Fed. R. Bankr. P. 3002(c), 3002(c)(1). The Plaintiffs' attorney stated during the hearing on the Motion that neither of the Plaintiffs will file a proof of claim.

[15] *See* "Order Re Ex Parte Motion" (Docket # 31) in Case No. 24-45025 at pdf p.14.

[16] It was Roger Ottoman's non-debtor spouse, Defendant Marcia Ottoman, who, on July 31, 2024, provided notice, by email, of Roger Ottoman's May 21, 2024 bankruptcy filing to the state court and the Plaintiffs' attorney, more than 2 months after the bankruptcy case was filed. (*See* Docket # 31 in Case No. 24-45025 at pdf p. 16.).

5

**D. Post-notice events**

On August 1, 2024, the Plaintiffs, having finally received notice of Roger Ottoman's bankruptcy filing, sent a letter with ten attached exhibits to Roger Ottoman's bankruptcy attorney, explaining in detail, among other things, their basis for concluding that the Property at issue contained public rights-of-way and that they had a right to install fiber optic cable for high-speed broadband internet under the rights-of-way, and detailing the scope of the project.[17]

On August 2, 2024, the state court held a hearing on the Plaintiffs' motion for a temporary restraining order and a show-cause order. On August 5, 2024, the state court entered an order granting the Plaintiffs' motion, and entering a temporary injunction against all of the state court Defendants except Roger Ottoman (the "TRO").[18] The TRO stated, in relevant part;

> **IT IS HEREBY ORDERED** that Plaintiffs' Motion [for TRO] is GRANTED as to Defendants Thomas Lee Walkley, Marcia Ottoman, Café Forty-One Eleven, Inc., Ottoman Roger J. Trust, and Ottoman Farm, LLC for the reasons set forth on the record.
>
> **IT IS HEREBY FURTHER ORDERED** that these Defendants, are prohibited from doing any of the following:
>
> (1) interfering with the installation of broadband and other services along Waterloo and McKinley Roads, and
>
> (2) interfering with Charter's facilities after they are installed along Waterloo and McKinley Roads.[19]

---

[17] *See* Ex. B to the Plaintiffs' "Motion to Lift Automatic Stay . . ." (Docket # 19-2 in Case No. 24-45025).

[18] *See* Docket # 31 in Case No. 24-45025 at pdf pp. 18-19 ("Order Granting Plaintiffs' Motion for Temporary Restraining Order").

[19] *Id*. (bold and capitalization in original).

On August 7, 2024, the County and Charter filed a motion in Roger Ottoman's bankruptcy case entitled "Motion to Lift Automatic Stay to Continue Declaratory Judgment Action" (the "Stay-Relief Motion"), seeking "to lift the automatic stay to allow the County and Charter to continue their declaratory judgment action in Washtenaw County against [Roger Ottoman] and any entity in which the entity claims an interest in the [P]roperty . . . including but not limited to Ottoman Farm, LLC and the Roger J. Ottoman Trust."[20]  Roger Ottoman filed a response objecting to the Stay-Relief Motion, arguing, in relevant part, that Plaintiffs cannot demonstrate cause for relief from the automatic stay because "[d]etermining what is property of the estate is within the exclusive jurisdiction of the bankruptcy court."[21]  Defendants Ottoman Farm, LLC and Marcia Ottoman filed a response in support of Roger Ottoman's objection to the Stay-Relief Motion, arguing in relevant part that "[t]his Court should not grant the [Stay-Relief Motion] as County and Charter have already violated the Automatic Stay and will continue to do so in the coming weeks and days until this case is adjudicated in this court or this case has been settled in Mediation."[22]

On August 22, 2024, the Roger Ottoman removed the State Court Lawsuit to this Court.

On September 4, 2024 the Court held a hearing on the Stay-Relief Motion and then

---

[20]  Docket # 19 in Case No. 24-45025 at 3 ¶ 6.

[21]  Docket # 25 in Case No. 24-45025 ("Debtor's Objection to Motion for Relief From Stay Filed by Washtenaw County (County) and Spectrum Mid-America, LLC (Charter)") at pdf p. 4; Docket # 36 ("Further Exhibit of Relevant Authority Regarding Debtor's Objection to Motion for Relief from Stay Filed by Washtenaw County (County) and Spectrum Mid-America, LLC (Charter)").

[22]  Docket # 31 in Case No. 24-45025 ("Defendants Marcia Ottoman and Ottoman Farm[, LLC] (Defendants) Response in Support of Debtor Roger Ottoman Objections to Motion for Relief from Stay Filed by Washtenaw County (County) And Spectrum Mid-America, LLC (Charter)") at pdf p. 1.

entered on order for a further hearing, and also ordered that:

> IT IS ORDERED that:
>
> . . .
>
> 2. To the extent that the automatic stay applies, and with the exception stated in paragraph 3 below, the automatic stay will continue in effect until the conclusion of the further hearing on the Motion, until and unless the Court orders otherwise in a future order.
>
> 3. The automatic stay does not preclude any party from continuing to litigate in this Court in Adversary Proceeding No. 24-4360, including litigating issues relating to removal jurisdiction and abstention.[23]

The further hearing on the Stay-Relief Motion was held on October 23, 2024, at which time the Court took that motion under advisement.

**E. Plaintiffs' abstention motion**

On September 17, 2024, the Plaintiffs filed the Motion, arguing that this Court should abstain from hearing this proceeding under both the mandatory and permissive abstention provisions of 28 U.S.C. § 1334(c), and remand the case back to the state court.[24]

In his response objecting to the Motion, Roger Ottoman argues that the Court should not abstain based on either the mandatory or the permissive abstention provisions of 28 U.S.C. § 1334(c) because:

> • This Court has exclusive jurisdiction to determine property of the estate, and all 3 counts in the [state court c]omplaint require a determination as to Debtor's property interests vis a vis Charter and the County.

---

[23] Docket # 39 in Case No. 24-45025 (footnote omitted).

[24] Docket # 17.

- Mandatory abstention is not applicable because the removed [State Court] Lawsuit is a core proceeding to determine property of the estate, and the [state court c]omplaint and the . . . TRO Motion reference and rely on nonbankruptcy federal law for the relief requested, in addition to Michigan law.

- Movants will not be able to satisfy their burden to demonstrate that the permissive abstention/equitable remand factors militate in favor of abstention because they do not.

- In any event, the postpetition [State Court] Lawsuit, though filed without notice of the Debtor's bankruptcy filing, is an in rem lawsuit in violation of the automatic stay and void (which may moot various proceedings before the Court).[25]

In her response objecting to the Motion, the Defendant Marcia Ottoman does not address the requirements of the mandatory and permissive abstention provisions of 28 U.S.C. § 1334(c) or explain how the requirements are not satisfied, but rather addresses only the merits of the State Court Lawsuit.[26]  In his response objecting to the Motion, the Defendant Thomas Lee Walkley merely concurs with each of the responses objecting to the Motion filed by Roger Ottoman and Marcia Ottoman.[27]

The Court held a lengthy hearing on the Plaintiffs' Motion on October 23, 2024, and took the Motion under advisement.

**III. Discussion**

The Court concludes in its discretion that it should abstain, based on the permissive abstention provision of 28 U.S.C. § 1334(c)(1), and remand this case to the state court.  For the

---

[25] Docket # 31 at 1.

[26] *See* Docket # 24.

[27] *See* Docket # 26 at 11.

reasons discussed below, mandatory abstention under 28 U.S.C. § 1334(c)(2) does not apply, but the Court can and will abstain based on permissive abstention.

"28 U.S.C. § 1334(c) applies to abstention. It has two parts: permissive abstention under § 1334(c)(1) and mandatory abstention under § 1334(c)(2)." *Palltronics, Inc. v. PALIoT Solutions, Inc.* (*In re Lightning Techs., Inc.*), 647 B.R. 76, 99 (Bankr. E.D. Mich. 2022).

Section 1334(c)(2) governs mandatory abstention, and states:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). Section 1334(c)(1) governs permissive abstention, and states:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

## A. Mandatory abstention

For the following reasons, the Court cannot abstain based on the mandatory abstention provision of 28 U.S.C. § 1334(c)(2).

> [F]or mandatory abstention to apply to a particular proceeding, there must be a timely motion by a party to that proceeding, and the proceeding must: (1) be based on a state law claim or cause of action; (2) lack a federal jurisdictional basis absent the bankruptcy; (3) be commenced in a state forum of appropriate jurisdiction; (4) be capable of timely adjudication; and (5) be a non-core

10

proceeding.

*Lindsey v. Dow Chemical Co.* (*In re Dow Corning Corp*.), 113 F.3d 565, 570 (6th Cir. 1997).

All but two of these requirements clearly are met in this case. The Plaintiffs filed a timely motion for abstention, and requirement nos. 1, 3, and 4 above are met. Roger Ottoman argues that requirement nos. 2 and 5 are missing. The Court concludes that requirement no. 5 is met, but that requirement no. 2 is not.

As for requirement no. 5, Roger Ottoman argues that the State Court Lawsuit is a core proceeding, because it is a dispute about what is and is not property of the bankruptcy estate in Roger Ottoman's Chapter 12 bankruptcy case. There is no dispute that Roger Ottoman is the owner of the Property, but he argues that the outcome of the State Court Lawsuit will determine whether and to what extent his Property is subject to (and in his view diminished by) the rights the Plaintiffs are claiming to install and maintain internet cable under the alleged rights-of-way. According to Roger Ottoman, that makes this a core proceeding, citing cases including *Hafen v. Adams* (*In re Hafen*), 616 B.R. 570 (B.A.P. 10th Cir. 2020). If this is a core proceeding, the Court cannot abstain based on mandatory abstention.

The Plaintiffs argue that this is not a core proceeding. They argue that at most, this Court has only "related to" jurisdiction over the claims in the removed State Court Lawsuit. That is, the claims are "related to" Roger Ottoman's pending Chapter 12 bankruptcy case, but none of the claims is a proceeding "arising under title 11 or arising in a case under title 11."

This Court previously has explained what these jurisdictional terms mean:

> Under 28 U.S.C. §§ 1334(b), this Court has "original but not
> exclusive jurisdiction of all civil proceedings arising under title 11,
> or arising in or related to cases under title 11. This Court has

11

previously discussed what "arising under title 11" means; what "arising in . . . cases under title 11" means; and what "related to cases under title 11" means.

> "The phrase 'arising under title 11' describes those proceedings that involve a cause of action created or determined by a statutory provision of title 11, and 'arising in' proceedings are those that, by their very nature, could arise only in bankruptcy cases." *Bliss Technologies, Inc. v. HMI Indus., Inc.* (*In re Bliss Technologies, Inc.*), 307 B.R. 598, 602 (Bankr. E.D. Mich. 2004) (quoting [*Mich. Emp. Sec. Comm'n v. Wolverine Radio Co., Inc.* (*In re Wolverine Radio Co., Inc.*), 930 F.2d 1132, 1144 (6th Cir. 1991))]. These two categories of civil proceedings are "core" proceedings within the meaning of 28 U.S.C. §§ 157(b)(1) and 157(b)(2). *Id.*

*Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009) (footnotes omitted). As for the category of "related to cases under title 11," this Court has stated as follows:

> The Sixth Circuit has adopted the test articulated in *Pacor, Inc. v. Higgins* (*In re Pacor, Inc.*), 743 F.2d 984, 994 (3d Cir. 1984), for determining "related to" jurisdiction:

>> "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is *whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."

> *Wolverine Radio*, 930 F.2d at 1142 (emphasis in original)(quoting *Pacor, Inc. v. Higgins* (*In re Pacor, Inc.*), 743 F.2d 984, 994 (3d Cir. 1984)(emphasis in original)); *see also Lindsey v. O'Brien, Tanski, Tanzer and Young Health Care Providers of Connecticut* (*In re Dow Corning*

12

*Corp.*), 86 F.3d 482, 489, 490 (6th Cir. 1996). . . . Proceedings "related to" the bankruptcy case include "more than simple proceedings involving the property of the debtor or the estate." *Celotex Corp. v. Edwards*, 514 U.S.[300,] 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 [(1995)]. And such "related to" proceedings include even "suits between third parties which have an effect on the bankruptcy estate." *Id.* at 308 n.5, 115 S.Ct. 1493. But the Sixth Circuit has cautioned against finding "related to" jurisdiction in "situations . . . where [there is] an extremely tenuous connection to the estate[.]" *See Wolverine Radio*, 930 F.2d at 1142.

> *Id.* at 28.

*Baum v. Baum* (*In re Baum*), 638 B.R. 748, 752 (Bankr. E.D. Mich. 2022) (italics in original).

The Court concludes that the Plaintiffs' claims are non-core, in that this Court has only "related to" jurisdiction over the claims.

None of the Plaintiffs' claims fit within the category of a proceeding "arising under title 11," because none of the claims involve a cause of action "created or determined by a statutory provision of title 11," *i.e.*, the Bankruptcy Code. The same is true of any claim for damages that Roger Ottoman might pursue against the Plaintiffs for alleged pre-petition damage to his Property.[28] Rather, such claims all are created and determined by Michigan law, and with respect to Plaintiffs' claims, also possibly by the nonbankruptcy federal law discussed below.

Nor do any of the claims fit within the category of a proceeding "arising in [a] case[ ] under title 11," because none of the claims "are those that, by their very nature, could arise only

---

[28] To date, Roger Ottoman has not formally asserted any such claim for damages against either of the Plaintiffs, either in the removed State Court Lawsuit, in his bankruptcy case, or in any other lawsuit in any court. No such claim against either of the Plaintiffs is listed in the Schedules or Statement of Financial Affairs filed in Roger Ottoman's bankruptcy case, or in the Chapter 12 plan he has proposed. (*See* Docket ## 14, 22 in Case No. 24-45025).

13

in bankruptcy cases." The Plaintiffs' claims, of course, actually were filed in state court before the Plaintiffs learned of Roger Ottoman's bankruptcy case, and by their nature, they certainly could arise in the absence of any bankruptcy case.[29]

Nor is this adversary proceeding a "core" proceeding under 28 U.S.C. § 157(b)(2)(B), because it does not concern "the allowance or disallowance of claims against the bankruptcy estate." Neither of the Plaintiffs has filed a proof of claim in Roger Ottoman's bankruptcy case, nor do they intend to do so, according to the Plaintiffs' counsel's representation made to the Court during the hearing on the Motion. This adversary proceeding therefore does not implicate the bankruptcy claim allowance process, and is not "core" under 28 U.S.C. § 157(b)(2)(B). *See, e.g., Beneficial Nat'l Bank USA v. Best Reception Sys., Inc.* (*In re Best Reception Sys., Inc.*), 220 B.R. 932, 949–50 (Bankr. E.D. Tenn. 1998).

For these reasons, the Court concludes that the removed State Court Lawsuit is not, in any part, a core proceeding. As a result, requirement no. 5 above is met, for abstaining based on the mandatory abstention provisions of 28 U.S.C. § 1334(c)(2).

This Court has "related to" (non-core) jurisdiction over the removed State Court Lawsuit, as the Plaintiffs' attorney essentially conceded during the hearing on the Motion.[30] This is because "the outcome" of the Plaintiffs' claims in the State Court Lawsuit "could conceivably have [an] effect on the estate being administered in bankruptcy." And the outcome of the State

---

[29] Roger Ottoman's argument about exclusive jurisdiction, that this Court has exclusive jurisdiction to determine what is and is not property of the Debtor and the bankruptcy estate, is discussed further in Part III.C.1 of this Opinion, below.

[30] If this were not so, of course, this Court would have to remand the removed State Court Lawsuit to the state court due to a lack of subject matter jurisdiction.

Court Lawsuit also could alter the Debtor's rights and liabilities, with respect to the Property.

While this Court has only "related to" (non-core) jurisdiction over the claims in the State Court Lawsuit, the Plaintiffs' Motion, seeking both abstention and a remand to state court, is a core proceeding. That is because the Motion is a proceeding "arising in [a] case[ ] under title 11," in that it is one that, by its very nature, "could arise only in bankruptcy cases." *See, e.g., Nickless v. Creare, Inc.* (*In re Haverhill Tech. Grp.*), 310 B.R. 478, 484-85 (Bankr. D. Mass. 2004); *see also AFC Real Estate, LLC v. Exeter Holding, Ltd.* (*In re Exeter Holding, LLC*), No. 12-8392, 2013 WL 1084548, at *2 (Bankr. E.D.N.Y. Mar. 14, 2013); *Meritage Homes Corp. v. JPMorgan Chase Bank, N.A.*, 474 B.R. 526, 537 (Bankr. S.D. Ohio 2012) (citing cases and agreeing with them). As a result, this Court may enter an order granting the Motion and abstaining and remanding the case, without first submitting proposed findings of fact and conclusions of law to the district court under 28 U.S.C. § 157(c)(1), even though the underlying claims in the case are non-core.

While requirement no. 5 listed above for mandatory abstention is met, requirement no. 2 is missing. That is, the Plaintiffs' claims in the removed State Court Lawsuit do not "lack a federal jurisdictional basis absent the bankruptcy." This is because in their complaint, the Plaintiffs alleged that their rights to install and maintain internet cable under the alleged public rights-of-way exist not only based on Michigan law, but also based on nonbankruptcy federal law, specifically 47 U.S.C. § 541(2). In paragraph 21 of their complaint, the Plaintiffs alleged:

> The roads at issue are unquestionably public rights-of-way and, as a franchised video provider, Charter has the right to "install, construct, and maintain a video service or communications network within a public right-of-way." MCL 484.3308(1); (Exhibit 6, Franchise Agreement with Dexter Township); ***see also***

> **47 U.S.C. § 541(2) ("Any franchise shall be construed to
> authorize the construction of a cable system over public
> rights-of-way.")**.[31]

This shows that there would be federal question jurisdiction for the Plaintiffs' claims, under 28

U.S.C. § 1331,[32] so that the claims in the removed State Court Lawsuit do ***not*** "lack a federal

jurisdictional basis absent the bankruptcy." The Plaintiffs' attorney conceded as much during the

hearing on the Motion. For this reason, this Court may not abstain based on the mandatory

abstention provisions of 28 U.S.C. § 1334(c)(2).

**B. Permissive abstention**

> As is clear from its wording, § 1334(c)(1) permits this Court to
> abstain from hearing a proceeding over which the Court has subject
> matter jurisdiction, based on any one or more of the following
> grounds: (1) "in the interest of justice;" or (2) "in the interest of
> comity with State courts;" or (3) "in the interest of . . . respect for
> State law."

*Hoffmann v. Ondrajka* (*In re Ondrajka*), 657 B.R. 217, 227 (Bankr. E.D. Mich. 2024) (quoting

*Palltronics, Inc. v. PALIoT Solutions, Inc.* (*In re Lightning Techs., Inc.*), 647 B.R. 76, 99-100

(Bankr. E.D. Mich. 2022)). Unlike mandatory abstention, permissive abstention could be done

even if the Plaintiffs' claims were core. In considering whether to abstain, courts consider a

"non-exclusive list of 13 factors:"

> The decision to abstain or not is aided by an analysis of all relevant
> factors, including a non-exclusive list of thirteen (13) decisional
> criteria set forth . . . in *Nationwide Roofing & Sheet Metal, Inc. v.
> Cincinnati Ins. Co.* (*In re Nationwide Roofing & Sheet Metal, Inc.*),
> 130 B.R. 768 (Bankr.S.D.Ohio 1991). Specifically, the following

---

[31] St. Ct. Compl. (Docket # 1) at pdf p. 8 (emphasis added).

[32] That section states that "[t]he district courts shall have original jurisdiction of all civil actions
arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

factors were identified: 1) the effect or lack of effect on the efficient administration of the estate if a court abstains; 2) the extent to which state law issues predominate over bankruptcy issues; 3) the difficulty or unsettled nature of the applicable state law; 4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; 5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; 6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; 7) the substance rather than form of an asserted "core" proceeding; 8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; 9) the burden of this court's docket; 10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; 11) the existence of a right to a jury trial; 12) the presence in the proceeding of nondebtor parties; and, 13) any unusual or other significant factors. *Nationwide*, 130 B.R. at 780 (citations omitted).

This non-exclusive list does not require a mechanical application of each factor, but provides a starting point for a permissive abstention analysis.

*Hoffmann v. Ondrajka*, 657 B.R. at 227-28 (quoting *Palltronics, Inc. v. PALIoT Solutions, Inc.*, 647 B.R. at 101 (quoting *Brothers v. Tremaine* (*In re Tremaine*), 188 B.R. 380, 384–85 (Bankr. S.D. Ohio 1995)).

The Court has considered all of the relevant circumstances and factors, and finds that they weigh heavily in favor of the Court exercising its discretion to abstain, "in the interest of justice;" "in the interest of comity with" the Washtenaw County Circuit Court; and "in the interest of . . . respect for" Michigan law. Of the 13 factors listed above, factor nos. 1, 2, 3, 4, 6, 7, 9, 10, 11, and 12 all weigh in favor of abstention, factor no. 8 does not apply (because this is not a core proceeding), and the only other factor (no. 5) does not weigh against abstention. Abstention is appropriate based on those factors. Abstention is appropriate for the following reasons.

17

- There will be no adverse effect on the efficient administration of the bankruptcy estate if this Court abstains. For example, neither the pendency nor the outcome of the State Court Lawsuit is likely to have any effect on Roger Ottoman's ability to obtain confirmation of his currently proposed Chapter 12 plan, or the timing of any such confirmation, or Roger Ottoman's ability to fund such plan.

- The Plaintiffs' claims in the State Court Lawsuit arise purely under Michigan law, and possibly also under nonbankruptcy federal law. They do not involve any bankruptcy law or bankruptcy-related issues.

- The applicable state law involved in the State Court Lawsuit appears to be somewhat difficult and complex, based on the arguments of the parties. For example, Defendant Marcia Ottoman, who is Roger Ottoman's spouse but who is not in bankruptcy, has made lengthy and elaborate arguments about why she contends that there is no public right-of-way or easement, and why she contends that the Plaintiffs do not have any right to install and maintain internet cable under the alleged public rights-of-way, without the landowners' consent.[33] For their part, the Plaintiffs' contrary position is based on a complex argument that the roads at issue are "highways by user" under Michigan law.[34] These state law issues are not simple, and they are best left for the state court, rather than this bankruptcy court, to sort through and decide.

- But for the filing of Roger Ottoman's bankruptcy case and removal of the State Court Lawsuit, this Court would not have jurisdiction over the claims in the State Court Lawsuit.

- This Court has only "related to" jurisdiction over the claims in the State Court Lawsuit — *i.e.*, such claims are non-core.

- The removal of the State Court Lawsuit is an obvious instance of forum shopping by the bankruptcy Debtor Roger Ottoman, which this Court should not allow. Roger Ottoman's removal of the State Court Lawsuit, on August 22, 2024, occurred barely more than two weeks after the state court entered a temporary injunction against all of the Defendants *other than* Roger Ottoman on August 5, 2024. That injunction prohibited all of those Defendants from "interfering with the installation of broadband and other services along Waterloo and McKinley Roads" and from "interfering with Charter's facilities after they are installed along Waterloo and McKinley Roads." It is

---

[33]  *See* "Def. Marcia Ottoman's Answer to [the Motion]" (Docket # 24) at pdf pp. 4-21.

[34]  This "highway by user" argument was explained by the Plaintiffs' attorney in a lengthy letter dated August 1, 2024, with 10 exhibits attached, which one of the Plaintiffs' attorneys sent to Roger Ottoman's bankruptcy counsel. (*See* Ex. B to the Plaintiffs' "Motion to Lift Automatic Stay . . ." (Docket # 19-2 in Case No. 24-45025)).

18

obvious that Roger Ottoman was not also enjoined in this way only because of his pending bankruptcy case and its automatic stay. From the August 5, 2024 state court injunction, Roger Ottoman and his bankruptcy counsel clearly saw the writing on the wall, and thinking that they would lose on the merits in the state court, they no doubt wanted to try to get another judge (the undersigned bankruptcy judge) to take over deciding the merits of the Plaintiffs' claims. This forum shopping motive is the only persuasive explanation for the removal of this case to this Court.

• Of the six Defendants in the State Court Lawsuit, only Roger Ottoman is a debtor in bankruptcy. None of the other five Defendants, including Roger Ottoman's spouse Marcia Ottoman, are in bankruptcy.

• Under all the circumstances, litigating the merits of the claims in the State Court Lawsuit in this Court, rather than in the state court, would pose an unnecessary and unjustified burden on this Court's docket.

For these reasons, the Court will exercise its discretion to abstain on permissive abstention grounds.[35]

## C. There is no valid ground precluding a remand based on permissive abstention.

The Court will address two additional arguments made by Roger Ottoman, in opposing abstention and remand.

### 1. This Court's jurisdiction to decide the merits of the Plaintiffs' claims is not "exclusive" jurisdiction. Rather, the state court has concurrent jurisdiction to decide the claims.

Roger Ottoman argues that abstention and a remand to state court are not permitted because this bankruptcy court has "exclusive jurisdiction" to determine what is and is not property of the bankruptcy estate in Roger Ottoman's bankruptcy case. This argument is based

---

[35] Because the Court is remanding the State Court Lawsuit on permissive abstention grounds, it is not necessary for the Court to decide whether it should remand the case based on the exception in the applicable removal statute, 28 U.S.C. § 1452(a), which does not allow for the removal of civil actions to enforce a "governmental unit's police or regulatory power." The Court raised this issue in a show cause order (Docket # 2), and the parties then briefed the issue (*see* Docket ## 6, 8, 11, 12, 14). But the Court expresses no view on that issue, since it is remanding this case on other grounds.

on the language of 28 U.S.C. § 1334(e)(1) that says that the district court (here the bankruptcy court, by reference) has "exclusive jurisdiction of the property, wherever located, of the debtor as of the commencement of [the bankruptcy case], and of property of the estate."  But this statute does not prevent abstention.  Rather, as this Court has explained before,

> [T]he abstention provisions, which mandate abstention in certain circumstances, and which broadly permit abstention in other circumstances, are located in the very same statutory section as § 1334(e)(1).  From this alone it is clear that § 1334(e)(1) does not preclude abstention.  And the wording of the permissive abstention provision, 28 U.S.C. § 1334(c)(1), makes this point even clearer, when it says that "**nothing in this section** prevents a district court" from abstaining (emphasis added).

*Hoffmann v. Ondrajka*, 657 B.R. at 225 (emphasis in original).

Roger Ottoman cites a decision of the Tenth Circuit Bankruptcy Appellate Panel, *Hafen v. Adams* (*In re Hafen*), 616 B.R. 570 (B.A.P 10th Cir. 2020), to argue that the bankruptcy court is the only court with subject matter jurisdiction to decide whether an asset is property of a debtor's bankruptcy estate.  There are at least four problems with Roger Ottoman's argument.

First, even if this general proposition is correct (which as discussed below, it is not, at least in the Sixth Circuit), it does not mean that the bankruptcy court has exclusive jurisdiction to decide all actions that may *affect* property of the bankruptcy estate.  In this case, for example, it is undisputed that Roger Ottoman is the owner of the Property at issue, and that the Property therefore is property of the bankruptcy estate.  The issue in the State Court Lawsuit concerns whether that Property is subject to or encumbered by a public right-of-way, which in turn gives the Plaintiffs the right to install and maintain internet cable under the alleged right-of-way.

Second, even if the above general proposition is correct, it does not mean that abstention

20

is precluded. As this Court pointed out in *Hoffmann v Ondrajka*, 657 B.R. at 226, a later

decision of the same bankruptcy appellate panel that decided the *Hafen* case explained and

distinguished *Hafen*, as follows:

> Although the Bankruptcy Court has exclusive jurisdiction over property of the estate, wherever located, **the Bankruptcy Court**, nevertheless, **is not required to hear all proceedings that may affect property of the bankruptcy estate**. McIntyre relies on . . . *In re Hafen* [616 B.R. 570 (10th Cir. BAP 2020)] to argue the Bankruptcy Court had exclusive jurisdiction over the State Law Claims . . . . We disagree.

> [A]lthough *Hafen* concluded the bankruptcy court is the only court with subject matter jurisdiction to determine whether a claim is property of the estate, the Adversary Proceeding at issue here is not such a proceeding.

> In *Hafen*, whether the bankruptcy court was the proper forum to adjudicate the claims was not at issue; rather, the issue was whether claims belonged to the debtor's investors or the bankruptcy estate. In fact, *Hafen* stands for the conclusion that **bankruptcy courts are** the only courts with subject matter jurisdiction to determine whether a claim is property of the estate, but **not the only courts with subject matter jurisdiction to liquidate a claim owned by a bankruptcy estate**.

> In this appeal, . . . [t[he issue is whether §1334(e)(1) mandates the Bankruptcy Court serve as the forum to adjudicate the State Law Claims. Just because the Bankruptcy Court had, and has, exclusive jurisdiction of property of McIntyre's bankruptcy estate under § 1334(e) (1) does not mean it had, and has, exclusive jurisdiction of civil proceedings concerning property of the bankruptcy estate. While § 1334(e)(1) establishes *in rem* jurisdiction of bankruptcy courts over property of the bankruptcy estate, **it does not "negate the provisions of 28 U.S.C. § 1334(b) that grant the bankruptcy courts original but not exclusive jurisdiction of civil proceedings 'arising under title 11, or arising in or related to cases under title 11.'"**

> . . . **[W]e conclude § 1334(e)(1) does not mandate the Bankruptcy Court hear the State Law Claims to the exclusion**

> of the state court.

*McIntyre v. Fangman* (*In re McIntyre*), No. CO-22-003, 2022 WL 18000098, at \*7-9 (B.A.P. 10th Cir. Dec. 30, 2022) (footnotes omitted) (emphasis added).

Third, an important point to remember, and which is mentioned in the *McIntyre* case quoted above, is that under 28 U.S.C. §§ 1334(a) and 1334(b), the district courts (by reference the bankruptcy courts) have "exclusive jurisdiction" only of the bankruptcy case itself, *see* § 1334(a), and they have "original **but not exclusive** jurisdiction" of "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b) (emphasis added). So whether this adversary proceeding (the removed State Court Lawsuit) is core or non-core, it is one over which this Court has "original" but ***not*** "exclusive" jurisdiction. This means that the state court also has jurisdiction to decide the State Court Lawsuit, and may do so when this Court remands this case back to the state court.

Fourth, Roger Ottoman's general proposition, described above, itself is incorrect, at least in the Sixth Circuit. In the case of *White v. White* (*In re White*), 851 F.2d 170 (6th Cir. 1988), the debtor filed a Chapter 11 bankruptcy case while his divorce case was pending in state court. The debtor's spouse moved for relief from stay, seeking, as the Sixth Circuit described it, "permission for the state court to make an appropriate division of the marital estate which, of course, also constitutes the [debtor] husband's bankruptcy estate." *Id.* at 170-71. The bankruptcy court granted such stay relief. The Sixth Circuit affirmed, thereby allowing the state court in the divorce case to divide the property as between the bankruptcy debtor and his non-debtor spouse, and thereby determine what was and was not property of the debtor, and therefore of the bankruptcy estate. The Sixth Circuit explicitly held that the bankruptcy court had discretion to

do this, despite the provision in 28 U.S.C. § 1334 (then § 1334(d), now § 1334(e)(1)), which gives the bankruptcy court "exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of [the bankruptcy] case, and of the property of the estate." *See id.* at 172 n.2, 173-75.

In the *White* case, then, the Sixth Circuit necessarily decided that when relief from stay is granted, a state court may exercise jurisdiction to decide what is property of the bankruptcy debtor (and therefore what is property of the bankruptcy estate). And in doing so, the Sixth Circuit approved the following reasoning of the bankruptcy court:

> We find no error, therefore, in the reasoning of Judge Bodoh that, "[U]ntil the court of Common Pleas for Ashtabula County, Ohio, makes a specific determination of the property rights as between the Debtor and his spouse, what is property of the Debtor's estate in this cause is unclear, and the reorganization of Debtor's business cannot proceed in an orderly fashion." The bankruptcy judge proceeded to lift the stay so that the state court might "determine the substantive rights of the parties under applicable, non-bankruptcy domestic relations law and to allow the parties to reach, or the state court to impose, a property settlement based on the state court's inquiry into the need for support and other factors under state law." At the same time, the bankruptcy court indicated its "exclusive jurisdiction over property of the Debtor . . . **when the state court defines what is the property of the Debtor** . . . ."

*Id.* at 174 (emphasis added).

The state court has concurrent jurisdiction, with this Court, to adjudicate the Plaintiffs' claims in the State Court Lawsuit. The state court, in adjudicating the Plaintiffs' claims, will be determining only matters governed by state law, and possibly certain nonbankruptcy federal law, including whether Roger Ottoman's Property is subject to the public right-of-way rights that the Plaintiffs claim to have. This is not unlike what this Court authorized when it abstained and

remanded a state court lawsuit in *Hoffmann v. Ondrajka*, permitting the state court in that case to

determine, among other things, whether the Chapter 13 debtor Ondrajka had "a lien under state

law on any of Hoffman's property."  *See Hoffmann v. Ondrajka*, 657 B.R. at 226.  This was an

example of abstention and a remand to permit a state court to determine whether a bankruptcy

debtor and his estate had a certain claimed property right (a lien) or not.

     As this Court pointed out in *Hoffmann v. Ondrajka*,

> It is well-settled that "[p]roperty interests are created and defined
> by state law.  Unless some federal interest requires a different
> result, there is no reason why such interests should be analyzed
> differently simply because an interested party is involved in a
> bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55,
> (1979).  State law claims can be, and often are, adjudicated in state
> court even after one of the parties has filed for bankruptcy relief.  It
> is not unusual for bankruptcy courts to permit this.  For example,
> this Court has abstained, and/or granted stay relief, to permit the
> parties to litigate in state court many times.  *See, e.g.*, *Baum v.
> Baum* (*In re Baum*), 638 B.R. 748, 751-54 (Bankr. E.D. Mich.
> 2022) (remanding removed state law claims to state court, based on
> mandatory abstention); *Abdoun Estate Holdings, LLC v. Abdulnoor*
> (*In re Abdoun Estate Holdings, LLC*), 635 B.R. 145, 146-47
> (Bankr. E.D. Mich. 2021) (same); *In re Cattron*, 647 B.R. 186,
> 189-92 (Bankr. E.D Mich. 2022) (granting relief from stay in a
> Chapter 13 case to permit creditor and the debtor to litigate state
> law claims in a pending state court action); *In re Blume*, 582 B.R.
> 178, 180 (Bankr. E.D. Mich. 2017) (same); *Palltronics, Inc. v.
> PALIoT Solutions, Inc*. (*In re Lightning Technologies, Inc.*), 647
> B.R. 76, 99 (Bankr. E.D. Mich. 2022) (abstaining, based on
> permissive abstention, regarding state law and non-bankruptcy
> federal law claims brought in adversary proceeding, to permit the
> claims to be litigated in a state court or a non-bankruptcy federal
> court); *Cowan v. Ladosenszky* (*In re Ladosenszky*), 617 B.R. 275,
> 278 (Bankr. E.D. Mich. 2020) (abstaining, based on permissive
> abstention, in favor of state court determining the amount of any
> divorce-related debt owing by the Chapter 7 debtor).

657 B.R. at 226-27.

2. **The Plaintiffs' filing of the State Court Lawsuit is not "void" as a violation of the automatic stay, and even if it were, that would not preclude abstention and remand.**

Roger Ottoman argues that the Plaintiffs' filing of their State Court Lawsuit is voidable because it was filed in violation of the automatic stay under 11 U.S.C. § 362(a), and that this Court should treat the lawsuit as void for that reason. The Court rejects this argument, and in any event, this argument is no barrier to this Court's permissive abstention.

First, while it is true that the filing of the State Court Lawsuit, as against Roger Ottoman only, was a violation of the automatic stay, and therefore voidable, this Court will not void the filing of that lawsuit.

In *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir. 1993), the Sixth Circuit held that "actions taken in violation of the stay are invalid and voidable and shall be voided absent limited equitable circumstances." The court described such "equitable circumstances" this way:

> [O]nly where the debtor unreasonably withholds notice of the stay and the creditor would be prejudiced if the debtor is able to raise the stay as a defense, or where the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result, will the protections of section 362(a) be unavailable to the debtor.

*Id.* In this case, it is undisputed that the Plaintiffs did not know that Roger Ottoman had filed bankruptcy when they filed the State Court Lawsuit, and that Roger Ottoman did not give the Plaintiffs any notice of the bankruptcy filing. The Court finds that the Debtor Roger Ottoman (1) "unreasonably withheld notice of the stay and [Plaintiffs] would be prejudiced if the [D]ebtor is able to raise the stay as a defense;" and (2) "is attempting to use the stay unfairly as a shield to avoid an unfavorable result," within the meaning of *Easley*, so the Court will not void the State

25

Court Lawsuit.

It is not clear how it would actually help Roger Ottoman or anyone else if this Court were to hold that the State Court Lawsuit is void as an automatic stay violation. Such a ruling would only lead to undue delay and additional expense for the parties. Such delay and additional expense is not a fair or justified motive for Roger Ottoman to seek a voidness ruling, if that is his motive. A ruling by this Court that the State Court Lawsuit is void would require this Court to dismiss the present adversary proceeding (the removed State Court Lawsuit), rather than remand it back to the state court. That likely would just lead the Plaintiffs to re-file their lawsuit in state court, and if Roger Ottoman removed such a re-filed lawsuit, the Court again would be ruling on abstention and remand. The only net result of all of this would be undue delay and expense, prejudicial to the Plaintiffs, and perhaps to the other Defendants (unless the Defendants are only interested in delay). And it would do Roger Ottoman no good except possibly buy him some delay, if that is what he wants. This is a further reason why Roger Ottoman's attempt to use the automatic stay in this way is unfair, under *Easley*.

A second problem with Roger Ottoman's argument is that even if this Court treated the filing of the State Court Lawsuit as void, that would not prevent this Court from abstaining under the permissive abstention provision of 28 U.S.C. § 1334(c)(1). As this Court has previously held, even if the Court were to treat the current situation as if there was no lawsuit pending, that would not preclude permissive abstention, because permissive abstention does not require that there be a pending lawsuit. *See Palltronics, Inc. v. PALIoT Solutions, Inc.*, 647 B.R. at 100-01.

For all of the reasons stated in this Opinion, the Court will abstain.

**D. Remand, and cause for stay relief**

26

Because this Court will abstain, a remand to the state court is necessary. In addition, the Court finds that there is "cause," under 11 U.S.C. § 362(d)(1), to grant relief from the automatic stay, to permit the parties to litigate the State Court Lawsuit to conclusion, including any appeals. Because the Plaintiffs have disavowed any intention to seek damages against Roger Ottoman in the State Court Lawsuit, stay relief will not be granted at this time to permit the Plaintiffs to take any action to seek such relief against Roger Ottoman, or to collect on any debt arising from any judgment against Roger Ottoman that may be entered by the Washtenaw County Circuit Court. During the hearing on the Motion, the Plaintiffs consented to this type of carve-out from the stay-relief they were seeking.

## IV. Conclusion

For the reasons stated in this Opinion, the Court will enter an order (1) abstaining from hearing this adversary proceeding, on permissive abstention grounds; (2) remanding this case back to the Washtenaw County Circuit Court from which it was removed; and (3) granting the relief from the stay described above.

**Signed on November 8, 2024**



/s/ Thomas J. Tucker
_____
**Thomas J. Tucker**
**United States Bankruptcy Judge**